IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| PREFERRED PROFESSIONAL INSURANCE COMPANY,<br><br>　　　　Plaintiff,<br><br>v.<br><br>HOUSTON CASUALTY COMPANY,<br><br>　　　　Defendant. | Case No. 8:14-CV-00364<br><br>**COMPLAINT**<br><br>**(Demand for Jury Trial)** |

　　　　Plaintiff Preferred Professional Insurance Company ("PPIC"), pursuant to Federal Rules of Civil Procedure 8(a) and 57 and 28 U.S.C. §§ 2201 and 2202, for its complaint against Defendant Houston Casualty Company ("HCC") states and alleges as follow:

### I. PARTIES, JURISDICTION, AND VENUE

　　　　1.　　　　PPIC is an insurance company incorporated under Nebraska law with its principal place of business in the State of Nebraska.

　　　　2.　　　　HCC is an insurance company incorporated under Texas law with its principal place of business in the State of Texas.

　　　　3.　　　　This Court has subject matter jurisdiction over PPIC's claims for relief pursuant to 28 U.S.C. § 1332(a)(1) because complete diversity of citizenship exists between PPIC and HCC and the amount in controversy exceeds $75,000, exclusive of interest and costs.

　　　　4.　　　　Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to PPIC's claims for relief occurred in this judicial district.

## II.  GENERAL ALLEGATIONS

### A.  HCC Policy

5.   HCC issued Insurance Company Professional Liability Policy No. 14-MG-09-A9637 to PPIC for the policy period April 15, 2009 to April 15, 2010 ("HCC Policy") with a $5 million Limit of Liability (inclusive of Defense Expenses), a July 1, 1976 Retroactive Date, and a $150,000 per Claim Retention.  A true and correct copy of the HCC Policy is attached as Exhibit A.

6.   The HCC Policy states in relevant part:

**INSURANCE COMPANY PROFESSIONAL LIABILITY POLICY**

\*     \*     \*

**Subject to the Limit of Liability and to all of the terms, conditions and limitations of this Policy and any endorsements to this Policy, (the "Underwriter") and the Insureds agree as follows:**

I.  **INSURING AGREEMENT**

The Underwriter will pay on behalf of the **Insured Loss** from **Claims** first made against the **Insured** during the **Policy Period** or, if applicable, the Extended Reporting Period, for **Wrongful Acts** first committed on or after the **Retroactive Date**.

II.  **DEFINITIONS**

\*     \*     \*

(B)   "**Claim**" means:

(1)   any civil proceeding in a court of law or equity, including any mediation or other alternative dispute resolution ordered or sponsored by such court;

\*     \*     \*

(5)   a written demand or notice to an **Insured** indicating that a person or entity intends to hold an **Insured** responsible for a **Wrongful Act**.

(C) "**Defense Expenses**" means reasonable legal fees and expenses incurred by or on behalf of any **Insured** in the defense or appeal of any **Claim**, including costs of appeal, attachment or similar bonds, provided that the Underwriter shall have no obligation to procure or furnish any bond. . . .

\*   \*   \*

(I) "**Loss**" means damages, judgments, awards, settlements, and **Defense Expenses** which an **Insured** is legally obligated to pay as a result of a **Claim**. **Loss** includes punitive or exemplary damages when insurable under the law pursuant to which this Policy shall be construed.  Where the **Insurance Company** has determined in good faith that punitive or exemplary damages are insurable under applicable law, the Underwriter will not raise as a defense to coverage the insurability of such damages; provided, however, that in the event of a challenge to such a determination by any other person or entity, the Underwriter shall be obligated to reimburse such damages only if a court of competent jurisdiction specifically determines that they are insurable. . . .

\*   \*   \*

(M) "**Professional Services**" means services performed by the **Insurance Company** . . . for a policyholder . . . of the **Insurance Company**, which, alone or in combination with other services, are performed for monetary consideration pursuant to a policy of insurance . . . .

In clarification and not in limitation of the foregoing, **Professional Services** includes **Professional Supervision**, the provision of computer and Internet services, administrative services, and publication of any materials prepared or written by any **Insured**, provided that such services are rendered in connection with the **Insurance Company's** business operations.

\*   \*   \*

(P) "**Related Claims**" means all **Claims** for **Wrongful Acts** based on or directly or indirectly arising out of or resulting from the same or related facts, circumstances, situations, transactions, or events or the same or related series of facts, circumstances, situations, transactions, or events.

\*   \*   \*

(S) "**Wrongful Act**" means:

(1) any actual or alleged act, error, omission, misstatement, misleading statement, or breach of fiduciary or other duty committed by an

3

>> **Insured** in rendering, or in failing to render, **Professional Services**;
>
> (2) any actual or alleged libel, slander, or oral or written publication of defamatory or disparaging material committed by an **Insured** in rendering **Professional Services**;
>
> \* \* \*

(Exhibit A at pages 11-14)

### B.  Medical Negligence Action

7. On April 2, 2007, Letoni Wilson, on behalf of her minor son T.J., filed a medical negligence action in the New Castle County, Delaware Superior Court, C.A. No. 07C-04-025 ("Medical Negligence Action"), against New Castle Family Care and PPIC insureds Phyllis James, M.D. ("Dr. James"), and physician's assistant Michelle Montague ("PA Montague") based on their alleged failure to properly diagnose and treat T.J. for kernicterus, a condition caused by high levels of bilirubin.

8. PPIC provided a defense to Dr. James and PA Montague in the Medical Negligence Action pursuant to terms of the individual health care provider professional liability claims made policy issued by PPIC.

9. During settlement negotiations, PPIC offered and tendered its policy limits of $1 million to Wilson; however, Wilson rejected the tender as a final settlement, waiving only her claim for prejudgment interest under 6 Del. Code § 2301(d) and choosing to proceed to trial.

10. On March 10, 2010, the court entered final judgment in favor of PA Montague in the Medical Negligence Action because Wilson failed to provide an admissible expert opinion that PA Montague had violated the applicable standard of care as required by 18 Del. Code § 6853(e).

11. On March 22-25, 2010, the Medical Negligence Action proceeded to trial against Dr. James and New Castle Family Care, and the jury returned a verdict against Dr. James and New Castle Family Care in the amount of $6.25 million.

12. PPIC paid its policy limits of $1 million in partial satisfaction of the judgment entered in the Medical Negligence Action to satisfy PPIC's indemnity obligations under its individual health care provider professional liability claims made policy.

### C.  Bad Faith Action

13. On April 26, 2010, Dr. James filed an action against PPIC and her counsel in the Medical Negligence Action in the New Castle County, Delaware Superior Court, C.A. No. N10C-04-212 ("Bad Faith Action"). A true and correct copy of the amended complaint filed on June 2, 2010 by Dr. James against PPIC in the Bad Faith Action ("Bad Faith Complaint") is attached as Exhibit B.

14. The Bad Faith Complaint alleged that PPIC breached its contractual and/or fiduciary duties and good faith obligations owed to Dr. James, which resulted in a judgment entered against Dr. James in the Medical Negligence Action in excess of PPIC's $1 million policy limits. (Exhibit B at ¶¶ 6-9)

15. PPIC tendered the Bad Faith Action to HCC as PPIC's professional liability insurance carrier and requested coverage for the Bad Faith Action under the HCC Policy.

16. On August 17, 2010, PPIC filed an answer denying the material allegations in the Bad Faith Complaint.

17. In a letter dated September 23, 2010, HCC acknowledged it owed insurance coverage to PPIC under the HCC Policy for the claims asserted in the Bad Faith Action. A true and correct copy of HCC's September 23, 2010 coverage position letter is attached as Exhibit C.

18.     Following PPIC's satisfaction of the $150,000 per Claim Retention, HCC began paying PPIC's Defense Expenses, as defined in the HCC Policy, incurred by PPIC in defending against the Bad Faith Action.

19.     On September 28 and October 11, 2011, the parties to the Bad Faith Action mediated their disputes, and PPIC agreed to pay a confidential amount in settlement of Dr. James' claims asserted against PPIC in the Bad Faith Action.

20.     Pursuant to the terms of the HCC Policy, HCC agreed to indemnify PPIC for the entire amount of PPIC's settlement payment to Dr. James in resolution of the Bad Faith Action.

21.     After HCC's payment of the settlement and PPIC's Defense Expenses in the Bad Faith Action, HCC requested that PPIC execute a settlement and release agreement ("Release Agreement").  A true and correct copy of the Release Agreement executed by PPIC on November 9, 2011, with the settlement amount and taxpayer identification number redacted, is attached as Exhibit D.

22.     The Release Agreement states in relevant part:

*     *     *

**WHEREAS**, the Insured was named as a defendant in a lawsuit captioned *Dr. Phyllis James, M.D. v. Preferred Professional Insurance Co., et al.*, C.A. No. N10C-04-212 (Del. Super. Ct., New Castle County) (the "Litigation");

**WHEREAS**, the Insured has reached an agreement to settle the Litigation in exchange for payment of $[redacted] to the plaintiff (the "Settlement Payment"); and

**WHEREAS**, the Insured has sought coverage under the Policy for the defense and settlement of the Litigation.

**THEREFORE**, in consideration of and in reliance upon the respective representations, covenants, terms and conditions herein contained, as well as other good and valuable consideration, the receipt of which is hereby acknowledged, the Parties agree as follows:

6

1. **PAYMENT BY HCC**

  1.1 In exchange for the consideration reflected in this Agreement, HCC shall pay the Settlement Payment on behalf of the Insured. . . .

  1.2 HCC shall pay all covered Defense Expenses . . . .

  1.3 The Settlement Payment and payment of Defense Expenses shall reduce the aggregate limit of liability in the Policy.

2. **RELEASE BY PARTIES**

  In exchange for the consideration reflected in this Agreement, and following payment of the amounts set forth in Paragraph 1 of this Agreement, the Parties hereby discharge each other and their respective affiliates, parents, subsidiaries, predecessors, successors, agents, officers, directors, employees, attorneys, insurers, reinsurers, representatives, agents, heirs, beneficiaries, and assigns and any person acting on its behalf from any and all claims, actions, causes of action, rights or obligations, whether known or unknown, whether contingent or liquidated, of every kind, nature and description that the Parties now have or may in the future have against each other (collectively, the "Released Matters") arising out of, related to, based upon, by reason of, or in any way involving:

  (a) the Litigation, the allegations that were or could have been made in the Litigation, or the same or related facts, circumstances, situations, transactions or events or same or related series of facts, circumstances, situations, transactions or events at issue in the Litigation;

  (b) any claim for Defense Expenses incurred in connection with the Litigation; or

  (c) any claim for misrepresentations, fraud, indemnity, contribution, breach of contract, breach of duty, negligence, "bad faith," violation of statute or regulation, unfair claims handling, unfair or deceptive trade practices, or damages of any kind whatsoever arising out of or relating to the Litigation or the claim for coverage arising out of the Litigation.

        *  *  *

(Exhibit D at pages 1-3)

### D. Underlying Action

23. On January 15, 2013, attorney John Spadaro, as guardian ad litem for T.J., filed an action against PPIC, PA Montague, and PA Montague's counsel in the Medical Negligence Action in the New Castle County, Delaware Superior Court, C.A. No. N13C-01-119 ("Underlying Action"), seeking, in part, to set aside the March 10, 2010 judgment entered in favor of PA Montague in the Medical Negligence Action "for fraud upon the Court."

24. On March 28, 2013, Spadaro filed an amended complaint ("Underlying Complaint") alleging that at the time of examination of T.J. on July 21, 2006, PA Montague created a medical record/office note ("Original Office Note") that was not produced in discovery in the Medical Negligence Action and that an altered medical record was produced in its stead.

25. The Underlying Complaint alleged Wilson and her counsel learned of the existence of the Original Office Note and the production of the altered medical record during the course of discovery in the Bad Faith Action.

26. The Underlying Complaint alleged the alteration to the Original Office Note was deliberately intended to minimize T.J.'s medical condition and, if disclosed, would have undermined the defense of the Medical Negligence Action and placed PPIC's liability coverage "at greater risk."

27. The Underlying Complaint asserted claims for civil conspiracy and other wrongful conduct against PPIC for allegedly conspiring with PA Montague and PA Montague's counsel to conceal the production of the Original Office Note and for producing the altered medical record in the Medical Negligence Action.

28. The Underlying Action sought millions of dollars in damages.

29. PPIC tendered the Underlying Action to HCC as PPIC's professional liability insurance carrier and requested coverage for the Underlying Action under the HCC Policy.

30. PPIC retained attorneys William J. Cattie III with the law firm Rawle & Henderson LLC and Steven J. Schildt with the law firm Post & Schell, P.C. to defend PPIC in the Underlying Action.

31. On February 28, 2013, HCC responded to PPIC's tender and took the position it did not owe insurance coverage under the HCC Policy because the claims alleged in the Underlying Action were subject to the Release Agreement executed in conjunction with the settlement of the Bad Faith Action. A true and correct copy of HCC's February 28, 2013 coverage position letter, with the settlement amount and T.J.'s name redacted and without enclosure, is attached as Exhibit E.

32. PPIC objected to HCC's coverage position on the bases that the claims at issue in the Underlying Action are covered under the HCC Policy and the Release Agreement was unenforceable because it lacked the requisite consideration.

33. On July 22, 2013, approximately five months after its initial denial of coverage, HCC withdrew its denial of coverage for the Underlying Action and agreed to provide coverage to PPIC subject to a reservation of rights.

34. In its July 22, 2013 reservation of rights letter, HCC continued to maintain the position that the Release Agreement applied to preclude an indemnity obligation to PPIC for the claims alleged in Underlying Action.

35. HCC did not object to the retention of attorneys Cattie and Schildt to defend PPIC in the Underlying Action.

36. PPIC consented to HCC's direct communication with attorneys Cattie and Schildt so that HCC could acquire all information it deemed relevant to investigate the claims made in the Underlying Action.

37. In August 2013, Spadaro made an initial demand of $30 million to PPIC in exchange for a dismissal with prejudice of all claims against PPIC and PA Montague in the Underlying Action.

38. PPIC forwarded Spadaro's settlement demand to HCC and requested that HCC honor its obligations under the HCC Policy so as to protect PPIC's interests. PPIC further requested that HCC attempt to resolve the Underlying Action within the remaining policy limits of the HCC Policy.

39. HCC refused to participate in the settlement negotiations in the Underlying Action and continued to maintain the position that it did not owe an indemnity obligation for any settlement pursuant to the terms of the Release Agreement.

40. On December 4, 2013, PPIC advised HCC that PPIC's defense counsel recommended settling the Underlying Action for a certain, confidential amount.

41. HCC provided consent to PPIC to offer the confidential settlement amount to Spadaro to resolve the Underlying Action.

42. Spadaro accepted the confidential settlement amount to resolve the Underlying Action ("Underlying Settlement"), and PPIC is to be dismissed with prejudice in the Underlying Action.

43. PPIC has paid the Underlying Settlement to resolve the Underlying Action.

44. PPIC incurred and paid approximately $263,861.96 in Defense Expenses, as defined in the HCC Policy, to its attorneys in defending the Underlying Action.

45. PPIC has provided HCC with the defense invoices from the law firms of Rawle & Henderson LLC and Post & Schell, P.C. for the defense of PPIC in the Underlying Action ("defense invoices").

46. PPIC has requested payment from HCC of the defense invoices.

47. PPIC has requested payment from HCC for the Underlying Settlement up to the remaining policy limits of the HCC Policy.

48. HCC has refused to pay any portion of the defense invoices.

49. HCC has refused to pay any portion of the Underlying Settlement up to the available policy limits of the HCC Policy.

50. HCC continues to maintain the position that the Release Agreement bars recovery under the HCC Policy for Defense Expenses and the Underlying Settlement.

51. HCC has intentionally and unreasonably delayed and denied payment of Defense Expenses and the Underlying Settlement.

52. The claims asserted against PPIC in the Underlying Action are within the scope of coverage of the HCC Policy, and HCC owes an obligation to indemnify PPIC for the defense invoices as covered Defense Expenses and the Underlying Settlement up to the policy limits of the HCC Policy.

### III.  CLAIMS FOR RELIEF

#### A.  First Claim for Relief – (Breach of Contract)

53. PPIC incorporates and realleges Paragraphs 1 through 52 above as if fully set forth herein.

54. PPIC has become legally obligated to pay, and has paid, Defense Expenses as well as the Underlying Settlement in the Underlying Action.

55. PPIC has paid all premiums and substantially performed any and all conditions under the HCC Policy or, alternatively, such conditions have been waived or are excused.

56. By denying coverage and failing to honor its obligations and the terms of the HCC Policy, as well as by not fully or timely paying PPIC's Defense Expenses incurred and paid in defending the Underlying Action, by refusing to indemnify PPIC for any portion of the Underlying Settlement up to the policy limits of the HCC Policy, and by insisting on the application of the Release Agreement to avoid its contractual obligations under the HCC Policy, HCC has breached the duties and obligations under the HCC Policy.

57. PPIC, as a direct and proximate result of HCC's breach of contract, has suffered damages and has been deprived of the benefit of timely insurance proceeds.

58. PPIC's damages include, but are not limited to, the amounts already paid by PPIC for Defense Expenses and the Underlying Settlement up to the remaining policy limits of the HCC Policy.

59. PPIC is entitled to a judgment in its favor for damages sustained as a result of HCC's breach of contractual obligations and an award of attorneys' fees in addition to such damages pursuant to Neb. Rev. Stat. § 44-359.

### B.  Second Claim for Relief – (Declaratory Relief)

60. PPIC incorporates and realleges Paragraphs 1 through 59 above as if fully set forth herein.

61. After HCC's payment of the settlement and PPIC's Defense Expenses in the Bad Faith Action, HCC requested that PPIC execute the Release Agreement.

62. Pursuant to the terms of the Release Agreement, PPIC agreed to discharge HCC from "Released Matters" defined in relevant part as "any and all claims, actions, causes of

action, rights or obligations, whether known or unknown, whether contingent or liquidated, of every kind, nature and description that" PPIC "now ha[s] or may in the future have against" HCC "arising out of, related to, based upon, by reason of, or in any way involving . . . the [Bad Faith Action], the allegations that were or could have been made in the [Bad Faith Action], or the same or related facts, circumstances, situations, transactions or events or same or related series of facts, circumstances, situations, transactions or events at issue in the [Bad Faith Action]." (Exhibit D at pages 2-3)

63. The Bad Faith Action involved Dr. James' allegations that PPIC breached its contractual and/or fiduciary duties and good faith obligations owed to Dr. James, which resulted in a judgment entered against Dr. James in the Medical Negligence Action in excess of PPIC's $1 million policy limits. (Exhibit B at ¶¶ 6-9)

64. The Underlying Action involved Spadaro's allegations on behalf of T.J. that PPIC conspired with PA Montague and PA Montague's counsel to conceal the production of the Original Office Note and produce the altered medical record in the Medical Negligence Action.

65. Because the Release Agreement was executed by PPIC after HCC had paid the settlement and PPIC's Defense Expenses in the Bad Faith Action as HCC was already required to do under the HCC Policy, the Release Agreement lacked the requisite consideration and is unenforceable.

66. Even if the Release Agreement is not unenforceable due to lack of consideration, the Underlying Action is not one of the "Released Matters" under the Release Agreement.

67. Relying on the Release Agreement, HCC has denied it owes any coverage obligations to PPIC under the HCC Policy for the Underlying Action.

68. An actual controversy exists between PPIC and HCC regarding whether the Release Agreement is enforceable due to lack of consideration and whether the Release Agreement precludes coverage under the HCC Policy for the Underlying Action.

69. PPIC is entitled to judgment in its favor, pursuant to 28 U.S.C. § 2201, declaring that the Release Agreement does not preclude coverage for the Underlying Action under the HCC Policy because the Release Agreement is unenforceable due to lack of consideration and, even if the Release Agreement is enforceable, the Underlying Action is not one of the "Released Matters" under the Release Agreement.

WHEREFORE, PPIC prays that judgment be entered in its favor as follows:

1. Awarding damages in the amount of Defense Expenses and the Underlying Settlement up to the remaining policy limits of the HCC Policy paid by PPIC with respect to the Underlying Action;

2. Declaring the Release Agreement does not preclude coverage for the Underlying Action under the HCC Policy;

3. Awarding PPIC its attorneys' fees pursuant to Neb. Rev. Stat. § 44-359; and

4. Awarding PPIC such additional relief as shall be deemed appropriate in the circumstances, together with its costs and expenses.

**REQUEST FOR PLACE OF TRIAL**

Pursuant to NECivR 40.1(b), PPIC requests trial of the case in Omaha.

Dated this 20th day of November, 2014.

                    PREFERRED PROFESSIONAL INSURANCE COMPANY, Plaintiff

                    By  s/ Tory M. Bishop
                        Tory M. Bishop # 18527
                        Angela Probasco # 22580
                        KUTAK ROCK LLP
                        The Omaha Building
                        1650 Farnam Street
                        Omaha, NE  68102-2186
                        (402) 346-6000 (Telephone)
                        (402) 346-1148 (Facsimile)
                        tory.bishop@kutakrock.com
                        angela.probasco@kutakrock.com